BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

MAR - 1 1979

PATRICIA D. HOWARD
CLERK OF THE PANEL

3/1/79

IN RE FOOD FAIR          )   DOCKET NO. 368
SECURITIES LITIGATION     )

OPINION AND ORDER

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND EDWIN A. ROBSON,
STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, AND
CHARLES R. WEINER, JUDGES OF THE PANEL.

PER CURIAM

I.   BACKGROUND

This litigation consists of six actions pending
in two districts:  three in the Southern District of New
York and three in the Eastern District of Pennsylvania.
The principal defendants in these actions are Food Fair,
Inc. and several of its present and former officers and
directors.  Ten of these individuals are named as defendants
in each action, and Food Fair is a defendant in four actions.
Other defendants named in one or more of these actions include
1) a realty firm and three other companies (Richman Associates,
Inc., MGS Incentives Company and Filigree Foods, Inc.) allegedly
owned by certain of the other defendants; 2) an individual
employed by two of these companies; 3) Food Fair's accounting
firm; and 4) Food Fair's general counsel.[1]

---

[1] Some of the defendants in these actions are hereinafter
collectively referred to as "the Friedland family."  The
Friedland family allegedly owns a substantial amount of
Food Fair's common stock and members of the family held
or held key positions in Food Fair's management.

Four of the actions before the Panel, two in New York and two in Pennsylvania, were commenced as class·actions. No class determinations have yet been made in any of these actions.

The first New York class action was commenced on behalf of all persons who purchased securities of Food Fair between October 25, 1975 and October 2, 1978. Plaintiff in this action alleges that defendants violated the Securities Exchange Act of 1934 in connection with a variety of Food Fair's public statements from 1975 through October 2, 1978. The complaint charges that Food Fair failed, inter alia, to disclose that Food Fair was encountering difficulties in obtaining goods from certain suppliers; that Food Fair was unable to make quantity purchases and obtain normal discounts, thereby substantially increasing its operating costs; and that the Friedland family was involved in self-dealings and conflicts of interest concerning Food Fair and other companies that supply merchandise to Food Fair.

The second New York class action was commenced on behalf of all persons who purchased certain subordinated debentures of Food Fair in the open market between 1975 and October 2, 1978. The complaint in this action alleges numerous violations of the Securities Exchange Act of 1934 in connection with a variety of Food Fair's public statements from 1974 through October 3, 1978. Specifically, plaintiff claims that many of Food Fair's published materials during that time period

were falsely optimistic, giving the misleading impression
that Food Fair's operations and financial condition were
in a healthy and proper condition.  These materials failed
to disclose, plaintiff alleges, the emergence of strong
competitors, as well as Food Fair's declining position in
the marketplace; Food Fair's high theft and pilferage rate;
Food Fair's continuing labor problems; Food Fair's poor
merchandising programs; Food Fair's inability to stock its
supermarkets; and Food Fair's difficulties in obtaining
credit from merchants and financing institutions. The complaint
in this action also alleges that Food Fair failed to disclose
the Friedland family's numerous **self-dealings and conflicts**
of interests, and the "resultant loss of obtaining the best
possible merchandise...at the best possible prices and
deliveries."

Except for some of the class action allegations, the
complaints in the two Pennsylvania class actions are virtually
identical.  The first of these actions was brought on behalf
of all persons who purchased Food Fair common stock between
approximately October 1, 1977 and October 2, 1978, and suffered
damages as a result thereof; the class action allegations
of the second action differ only in that the purported class
period runs from April 1, 1978 to "at least" October 2,
1978. The complaints in both actions allege that defendants
violated the Securities Exchange Act of 1934 as a result
of various misrepresentations and omissions during the purported

class periods set forth above.  Plaintiffs charge that Food
Fair failed, inter alia, to disclose its liquidity problems;
its inability to arrange adequate financing; its credit
problems with suppliers; its delinquencies in making timely
payments to suppliers; its inventory shortages; its inability
to maintain accurate accounting controls; and its substantial
operating losses incurred or to be incurred in fiscal 1978
and the first quarter of fiscal 1979.  The complaint also
alleges that Food Fair failed to disclose that certain food
brokers and wholesalers with which Food Fair conducted a
substantial amount of business were operated "by friends
and relatives of the Friedland [family] and executives of
Food Fair...."

The remaining two actions before us are both derivative
actions brought on behalf of Food Fair.  The complaints both
charge that the Friedland family dominates and controls
the operations of Food Fair and its board of directors.
The complaint in the Pennsylvania derivative action further
alleges a series of transactions whereby the Friedland family
gained ownership or control of Richman, MGS Incentives and
Filigree, and then caused Food Fair and some of its subsidiaries
and divisions to deal with those three companies on terms
favorable to the Friedland family but highly unfair to Food
Fair.  Included in the complaint are allegations of diversions
of corporate opportunities, self-dealings, and conflicts
of interest.  The complaint in the New York derivative action

-5-

includes similar allegations as to Richman and Filigree,
but does not specifically involve MGS Incentives.

On October 2, 1978, Food Fair filed a petition
in the Southern District of New York for protection under
Chapter XI of the Federal Bankruptcy Act.  On that same
day, the bankruptcy judge before whom the reorganization
proceedings are pending granted Food Fair's petition and
also entered an order restraining, inter alia, the prosecution
of any actions against Food Fair.  Under the supervision
of the bankruptcy judge, the parties in the bankruptcy proceedings
are, inter alia, continuing an investigation of Food Fair
that was commenced in August 1978 by Food Fair's Audit Committee
(composed of Food Fair's outside directors).

II.  PROCEEDINGS BEFORE THE PANEL

Food Fair, all but one of its present or former
directors who are defendants in this litigation, Food Fair's
general counsel, Filigree, and the realty firm allegedly
owned by the Friedland family have moved the Panel, pursuant
to 28 U.S.C. §1407, to centralize four of the six actions
before us in the Southern District of New York for coordinated
or consolidated pretrial proceedings.  The other two actions
now before the Panel came to our attention too late to be
included in the hearing order in this litigation. Plaintiffs
in these two actions, however, have agreed to be bound by
our determination, and, since all the defendants in these
actions are already before the Panel, these actions are

included in the order we are herewith entering under Section 1407.

Plaintiff in one of the Pennsylvania class actions opposes transfer.  Should the Panel find transfer appropriate, however, this plaintiff favors the Eastern District of Pennsylvania as the transferee district.  All other parties that have taken a position before the Panel favor or do not oppose transfer of all actions to a single district. Various parties have urged centralization of all actions in the Southern District of New York, and plaintiff in the Pennsylvania derivative action favors centralization in the Eastern District of Pennsylvania.

We find that these actions involve common questions of fact and that transfer of the New York actions under Section 1407 to the Eastern District of Pennsylvania for centralized pretrial proceedings with the actions pending there will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

## III.  THE QUESTION OF TRANSFER

Plaintiff in one of the Pennsylvania class actions, who is the sole party opposing transfer, initially argues that her action and the derivative actions share only "peripheral" questions of fact.  This plaintiff states that the principal wrongdoing alleged in the derivative actions concerns the relationships between Food Fair and certain

of its suppliers, whereas her action is brought under the
federal securities laws and focuses on certain specific
allegedly misleading statements issued by defendants.  While
recognizing that her action and the derivative actions share
factual questions concerning the Freidland family's alleged
self-dealings and conflicts of interests with regard to
certain food brokers and wholesalers, this plaintiff maintains
that she need prove no wrongdoing concerning these matters,
"but need show only that certain dealings which took place,
even if they involved no wrongdoing on the part of the Food
Fair directors ... nevertheless had an influence on Food
Fair suppliers."  Such allegedly minimal common factual
matters provide no predicate for Section 1407 transfer,
this plaintiff asserts.

This plaintiff contends that the impropriety of
coordinating or consolidating her action with the derivative
actions is made even more apparent in the light of certain
conflicts which may arise between the class and derivative actions.
In her class action, plaintiff argues, she will have to
prove wrongful acts by Food Fair. Plaintiffs in the derivative
actions on the other hand, are suing on behalf of Food Fair,
and must seek to defend Food Fair against charges of
wrongdoing.$\underline{2/}$ Moreover, although in her action the parties

2/  Plaintiff in the second Pennsylvania class action also
contends that there are a number of serious potential conflicts
between the derivative actions and the class actions.
This plaintiff suggests that the Panel could easily resolve
these potential conflicts by ordering that the transferee
judge establish separate and distinct committees of plaintiffs'
counsel for the derivative actions and the class actions.

-8-

and the court must go through the process of class action
determination, this plaintiff maintains, such proceedings
are irrelevant to plaintiffs in the derivative action and
would unduly delay progress in those actions.

This plaintiff also opposes coordination or consolidation
of pretrial proceedings in her action with those in the
New York class actions. The purported class period in those
two actions is more extensive than that in her action, this
plaintiff argues, and proof of the more limited misrepresentations
and omissions at issue in her action may require her to
prove that statements in annual reports in previous years
were correct, contrary to the allegations in the New York
class actions. In addition, this plaintiff contends, an
additional area of conflict may arise because recovery by
purchasers of debentures in one of the New York class actions
may affect the possibility of recovery on behalf of purchasers
of common stock, given Food Fair's current financial situation.
This plaintiff maintains that, absent a showing of substantial
benefit from the coordination or consolidation of the class
actions, these potential conflicts are a sufficient basis
upon which to deny Section 1407 transfer of these actions.

In order to avoid any possible duplicative discovery
in the class and/or derivative actions, this plaintiff suggests
that the parties stipulate that all discovery in any action
be available for use in all actions.

Finally, this plaintiff suggests that the terms of the restraining order issued in the bankruptcy proceedings may serve to stay all proceedings against Food Fair in this litigation.  Should this be the case, inclusion of the four actions in which Food Fair is a defendant in Section 1407 proceedings will create "difficulties in procedure," this plaintiff contends.

We find these arguments unpersuasive.  Although we recognize that some unique factual questions may be involved in certain of the actions before us, an analysis of the record before us reveals a commonality of factual questions among all actions concerning, inter alia, the relationships among Food Fair, the Friedland family and many of Food Fair's brokers and wholesalers, as well as the impact of those alleged relationships upon Food Fair's dealings with other, unrelated suppliers of merchandise.  Thus, centralization under Section 1407 is necessary in order to prevent duplication of discovery, eliminate the possibilty of conflicting pretrial rulings, and conserve the time and effort of the parties, the witnesses and the judiciary.  See In re Investors Funding Corp. of New York Securities Litigation, 437 F.Supp. 1199, 1200-02 (J.P.M.L. 1977).  The need for centralization is further highlighted by the presence of overlapping class determination requests in some of the actions now before us.  See In re Hawaiin Hotel Room Rate Antitrust Litigation, 438 F.Supp. 935, 936 (J.P.M.L. 1977).  While voluntary cooperation among

parties and their counsel is always commendable, transfer under Section 1407 and the assignment of all actions to a single judge will ensure the streamlining of discovery and all other pretrial proceedings as well.  See In re Commonwealth Oil/Tesoro Petroleum Securities Litigation, 458 F.Supp. 225, 229 (J.P.M.L. 1978).

We are convinced that the possible existence of certain conflicts between the class actions and the derivative actions, as well as among some of the class actions, commends, rather than militates against, Section 1407 transfer.[3/]

> In other multidistrict dockets we have repeatedly held, as we do here, that antagonistic interests among the parties may be accommodated by the transferee judge, who, from day-to-day contact with all aspects of the litigation, will be in the best position to protect the rights of all concerned, while at the same time streamlining the pretrial process.  See, e.g., In re Corrugated Container Antitrust Litigation, [447 F.Supp. 468, 471 (J.P.M.L. 1978)] ...; In re Sugar Industry Antitrust Litigation, 437 F.Supp. 1204, 1206-08 (J.P.M.L. 1977) ....

In re Uranium Industry Antitrust Litigation, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978).  See In re Franklin National Bank Securities Litigation, 393 F. Supp. 1093, 1095 (J.P.M.L. 1975) (class and derivative actions centralized before a

_____

[3/] The suggestion that the Panel order the transferee judge to establish separate committees of plaintiffs' counsel for the derivative actions and the class actions evidences a misunderstanding of the Panel's function under Section 1407. The Panel has neither the power nor the inclination to dictate in any way the manner in which transferee judges supervise actions pending before them.  See, e.g., In re Westinghouse Electric Corporation Uranium Contract Litigation, 436 F.Supp. 990, 996 (J.P.M.L. 1977); In re Plumbing Fixture Cases, 298 F.Supp. 484, 489 (J.P.M.L. 1968).  Such a request is more properly addressed to the transferee judge.

single transferee judge).  Any discovery unique to a particular
party or action can, of course, be scheduled by the transferee
judge to proceed concurrently with the common discovery,
thus enhancing the efficient conduct of the litigation.
See In re Republic National-Realty Equities Securities Litigation,
382 F.Supp. 1403, 1405-06 (J.P.M.L. 1974).  And no party
must participate in pretrial proceedings which that party
believes will not affect its interests.  See, e.g., Manual
for Complex Litigation, Parts I and II, §§2.31 (rev. ed.
1977).

The order entered in the bankruptcy proceedings
pending in the Southern District of New York that stays
certain proceedings against Food Fair in no way affects
the authority of the Panel to transfer the actions in which
Food Fair is a defendant, nor does Section 1407 transfer
itself affect the present status of those actions.  In In
re Franklin National Bank Securities Litigation, supra,
393 F.Supp. at 1095-96, the Panel was faced with a similar
situation and held as follows:

> Transfer of these actions under Section 1407 in no
> way affects the operation of the stay brought about
> by Bankruptcy Rule 401.  We are simply indicating the
> place where the pretrial proceedings of these actions
> will occur.  The question of the effect of the bankruptcy
> stay and any modification thereof is entirely a problem
> to be worked out by the transferee court, the bankruptcy
> court and the parties.  A Section 1407 transfer will
> produce the salutary consequence of having a single
> judge coordinate these actions with the bankruptcy
> proceedings and thereby eliminate the possiblity of
> inconsistent rulings.

See In re Capital Underwriters, Inc. Securities Litigation,
_____ F.Supp. _____, ____ (J.P.M.L., filed January 18, 1978)
(slip opinion at 13-14).

IV.   THE TRANSFEREE DISTRICT

        The parties that favor centralization of these
actions in the Southern District of New York rely primarily
on the pendency of Food Fair's Chapter XI bankruptcy proceedings
in that district.  These parties argue that the accounting
firm retained by the Creditor's Committee in the bankruptcy
proceedings has been ordered by the bankruptcy judge to
conduct a thorough and wide-ranging investigation into the
operations of Food Fair, the Freidland family and other companies
associated with Food Fair and the Freidland family.  This
investigation, these parties assert, is well underway and
will closely parallel the subject matter of the actions
before the Panel.  Moreover, these parties contend, thousands
of Food Fair's documents, many of which may be sought in
the course of pretrial proceedings in the actions before
the Panel, are now under the exclusive jurisdiction of the
bankruptcy court.  11 U.S.C. §511.  Thus centralization
of all actions in the Southern District of New York will
best promote coordination between the bankruptcy proceedings
and the actions before the Panel, these parties conclude.

        We have often recognized the importance of coordinating
civil actions with related bankruptcy proceedings, and frequently
the Panel has transferred litigations to a district in which

related bankruptcy proceedings are pending.  See, e.g., In
re Commonwealth Oil/Tesoro Petroleum Securities Litigation,
supra, 458 F.Supp. at 230.  Under the circumstances of the
present litigation, however, we are persuaded that transferring
the civil actions to the Eastern District of Pennsylvania
will result in the most efficient and expeditious resolution
of these actions.  The record before us clearly reveals
that the Eastern District of Pennsylvania is the "center
of gravity" of the civil actions.  For example, in the course
of deposing the members of Food Fair's Audit Committee,
plaintiff in one of the actions before us has discovered
that the Audit Committee, after some deliberation, elected
to centralize its activities in Philadelphia and to retain
Philadelphia rather than New York counsel, because the activities
and records in which the Audit Committee was interested
were themselves centered in Philadelphia.  E.g., Transcript
at 16.  In addition, while the Creditor's Committee in the
bankruptcy proceedings has retained an accounting firm to
investigate the activities of Food Fair, its directors and
others, that investigation itself will be centered in
Philadelphia.  Id. at 15. The numerous sound reasons for
centering not only these investigations, but also pretrial
proceedings in the actions now before the Panel, in the
Eastern District of Pennsylvania include the following:
(1) because Food Fair, as well as Richman and MGS, maintain
their headquarters in that district, and a majority of the
individual defendants reside there, many relevant documents

and anticipated witnesses are located there; and 2) Food
Fair's accounting firm, which is named as a defendant in
one of the actions before the Panel, maintains its records
and work papers concerning Food Fair in Philadelphia.

　　　　While Food Fair's documents are at the present
time under the control of the bankruptcy judge in the Southern
District of New York, in fact these documents are physically
located in Philadelphia, and the parties and counsel involved
in the bankruptcy proceedings in New York have examined,
and are continuing to examine, these documents in Philadelphia.
We are confident that communication and cooperation between
the judges handling the civil actions and the bankruptcy
proceedings, if viewed appropriate by those judges, together
with the cooperation and assistance of all parties and their
counsel, will accomplish any coordination which may be necessary
between the bankruptcy proceedings and the civil actions,
including the consideration of any requests that the private
litigants may make for access to and use of Food Fair's
documents. Any coordination efforts will, of course, be
facilated by the geographical accessibility of Philadelphia
to New York.  See In re Plumbing Fixture Cases, 295 F.Supp.
33, 33-34 (J.P.M.L. 1968).

-15-

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C.
§1407, the actions listed on the following Schedule A and
pending in the Southern District of New York be, and the
same hereby are, transferred to the Eastern District of
Pennsylvania and, with the consent of that court, assigned
to the Honorable Daniel H. Huyett, III, for coordinated
or consolidated pretrial proceedings with the actions listed
on Schedule A and already pending there.

SCHEDULE A                                    MDL-368

### SOUTHERN DISTRICT OF NEW YORK

Alton E. Gross v. Harold Friedland,          Civil Action
et al.                                        No. 78 Civ 4162

Eleanor Bader v. Food Fair, Inc.,            Civil Action
et al.                                        No. 78 Civ 4844

William Elster v. Samuel Freidland,          Civil Action
et al.                                        No. 78 Civ 6074

### EASTERN DISTRICT OF PENNSYLVANIA

Harry Lewis v. Filigree Foods, Inc.,         Civil Action
et al.                                        No. 79-2905

Mary M. Stein, etc. v. Jack M. Friedland,    Civil Action
et al.                                        No. 78-3667

Steven Goldman v. Jack M. Friedland,         Civil Action
et al.                                        No. 78-4378